(128 App. Div. 28.)

SHEPARD & MORSE LUMBER CO. v. HURD et al.

(Supreme Court, Appellate Division, Third Department.   September 17, 1908.)

TRUSTS—DISPOSAL OF TRUST PROPERTY—PURCHASE BY TRUSTEE—"SUBJECT."

A trust company, holding bonds under an agreement binding it to hold them, "subject" to the lien which it has on them, aggregating a specified sum, with interest, and to any proceeding that may be necessary to realize on default, and binding it to hold them as trustee, "subject to and after satisfying therefrom all" of its claims, for another as its interest may appear, has no duty to perform in relation to the bonds which is inconsistent with the character of purchaser for its own use, and its purchase on default vests the title in it; the word "subject" meaning subject to the lien of the trust company and to all the terms of the contract, including the right to become a purchaser.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 7, pp. 6712–6718; vol. 8, p. 7807.]

Appeal from Judgment on Report of Referee.

Action by the Shepard & Morse Lumber Company against John Hurd and others. From a judgment dismissing the complaint as to all defendants, except defendant John Hurd, on the report of a referee, plaintiff appeals. Affirmed.

May 21, 1891, the defendant John Hurd executed and delivered to the plaintiff a chattel mortgage on 23,000,000 feet of logs to secure the payment of three promissory notes, amounting in the aggregate to the sum of $102,500. As further security Hurd executed an agreement which purported to pledge his equity in mortgage bonds of the Northern Adirondack Railroad Company, of the face value of $825,000. The bonds were not deposited with the plaintiff but were in the actual possession of the defendant Franklin Trust Company to secure the payment of $220,000 and interest. The contract for the pledge to the trust company provided that it should have full right, power, and authority, without further demand or notice, "to sell, assign, or deliver the whole or any part of said securities, substitutes, or additions, at any broker's board, or at public or private sale, at their option, at any time or times thereafter without advertisement or notice to the Northern Adirondack Railroad Company, and also with the right to become purchasers at such sale or sales freed and discharged from any equity of redemption." On December 31, 1891, an agreement was entered into between Hurd and the plaintiff which provided that:

"Whereas, it is desired, in lieu of the mortgage under which said bonds were issued, to place a new mortgage upon the property of the road and to cancel the former mortgage and the bonds thereunder; and whereas, of the bonds to be issued under such new mortgage, the party of the second part is to receive as owner thereof, bonds to the amount of $595,000, which said bonds are to be delivered to and held by the Franklin Trust Company as security for their loan in the place and stead of the old issue of bonds aforesaid: Now, therefore, in consideration of the premises, and the mutual agreements hereinafter mentioned, the parties hereto hereby agree together as follows: The said party of the first part agrees to and does hereby release the said party of the second part and the said Franklin Trust Company from any and all obligations heretofore existing under the terms of the agreement of the 21st day of May, 1891, or otherwise, in so far as the same relates to the bonds to the amount of $825,000 issued or to be issued under the prior mortgage of the said Northern Adirondack Railroad Company and the security afforded thereby; and the said party of the first part hereby releases and discharges the said party of the second part and the said Franklin Trust Company from any obligation to hold such bonds or any portion thereof as security or part security to the loans heretofore made to the said party of the second part. The said party of the second part hereby pledges to the said party of the first part all his equity in and to the said $595,000 of bonds to

112 N.Y.S.—26

be issued to the said party of the second part, and to be delivered to and held by the said Franklin Trust Company as collateral to the loans made by the said Franklin Trust Company (aggregating $250,000), which said equity is subject to the lien of the said Franklin Trust Company for said loans; and the said party of the second part further agrees to obtain and deliver to the said party of the first part an obligation in writing from the Franklin Trust Company, that it, the said Franklin Trust Company, will hold as trustee for the said party of the first part, as its interest may appear, the $595,000 of bonds to be issued to the said party of the second part under the proposed mortgage and delivered to the Franklin Trust Company as aforesaid, as further security to the said party of the first part for its loan to the party of the second part as aforesaid, subject to and after satisfying therefrom all just claims of the said Franklin Trust Company for its, the said Franklin Trust Company's, loan to the party of the second part, aggregating the sum of $250,000."

January 6, 1892, the Franklin Trust Company executed and delivered to the plaintiff an instrument in writing which provided that, in consideration of the plaintiff's release, the cancellation of the bonds, and the issuance and delivery of $595,000 new mortgage bonds, the trust company would hold the bonds to be issued subject: "First; to the lien which the said trust company has on them, aggregating about $250,000, with interest, and to any proceeding that may be necessary to realize upon default; and, second, to hold said $595,000 bonds as trustee for the said Shepard & Morse Lumber Company as its interest may appear." In pursuance of this arrangement the bonds and mortgage were canceled and destroyed, and a new mortgage was given by the Northern Adirondack Railroad Company, and bonds to the amount of $420,-000 were issued to Hurd and deposited by him with the trust company in the place and stead of the bonds surrendered and canceled. The contract for this pledge was in writing, and gave the trust company full right, power, and authority, in case of default in payment of the amount secured, without demand or notice, to sell, assign, or deliver the whole or any part of such security, at any brokers' board, or at public or private sale, at their option, at any time or times hereafter, without advertisement or notice to the pledgor, and also "the right to become the purchasers thereof at such sale or sales freed and discharged from any equity of redemption." In March, 1895, Hurd having failed to pay $169,000 of the amount secured by the pledge, the trust company gave him, the plaintiff, and other lienors notice of an intention to sell the bonds, and that they would be sold at auction April 10, 1895, at the New York Real Estate salesroom, for account of whom it may concern, and said bonds were sold at public auction to the highest bidder, and were purchased for and on account of the trust company for the sum of $169,000.

The complaint alleges that the trust company afterwards, in violation of the rights of the plaintiff, disposed of the bonds and allowed them to be used in the purchase of the property and franchises of the railroad, upon the foreclosure of the mortgage given to secure the payment of the bonds, and demands judgment for the foreclosure of its chattel mortgage and a sale of the property, and that the trust company be adjudged chargeable with the value of the bonds and liable to pay the plaintiff for any deficiency.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Patterson, Bulkeley & Van Kirk, for appellant.
John P. Kellas, for respondents.

SEWELL, J. The argument of respective counsel in this case embraced a great many propositions it is unnecessary to consider. There is no dispute in regard to the regularity of the sale. It is substantially conceded that it was fairly conducted and in such a manner as to produce most nearly the full value of the property. The learned counsel for the appellant states in his brief that:

"The trust company had a right, under its general authority as holder of collateral to promissory notes payable to itself, to sell. The contention of the plaintiff has been, and is, that the trust company for its own private purposes had no right to buy in the bonds held by it as trustee, except as trustee, and that if it did buy in such bonds it bought them in subject to the trust with which the bonds were previously impressed. It could not buy them in for its own benefit, or take them or their proceeds in cash or property as its own property in any way, to the exclusion of the plaintiff."

As the plaintiff's right to recover rests upon this proposition, it is unnecessary to consider any other. The cases cited and relied upon by the plaintiff in support of this contention have not, in my judgment, any application to the facts of this case. In those cases the question considered and determined was whether a trustee could purchase the trust property which he was authorized to sell. In the present case the defendant Franklin Trust Company had no duty to perform in relation to the bonds which was inconsistent with the character of purchaser on its own account and for its own use.

A literal construction of the language of the agreement, by which it is claimed that a trust was created, would limit the duty or obligation of the trust company to any surplus or residue of the proceeds after a sale of the bonds and the satisfaction of its lien. The word "subject" is defined by lexicographers as meaning "to make liable; to bring under the control or action of; to make subservient." As used in this instrument it plainly means subject to the lien of the trust company and to all the terms of the contract of pledge, including the right to become a purchaser. That this was the intent and understanding of the parties is also apparent from the fact that the bonds were pledged to the plaintiff subject to the lien of the trust company, and it was agreed that the trust company should hold the bonds as trustee for the plaintiff, "subject to and after satisfying therefrom all just claims of the said Franklin Trust Company."

As there is nothing to indicate a different intention, it follows that it cannot successfully be insisted that the trust company owed the plaintiff any duty or obligation in regard to the bonds so long as its lien remained unsatisfied, or that any of its rights, under the contract of pledge, was affected by the agreement with the plaintiff.

I am therefore of the opinion that no wrong was done to the plaintiff by the sale or purchase of the bonds, that the sale vested the title in the trust company, and that the judgment should be affirmed, with costs. All concur.